WILLIAM M. NARUS
Acting United States Attorney
District of Oregon

STEVEN D. CLYMER
Special Attorney
MICHAEL J. HEYMAN
United States Attorney
District of Alaska
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Telephone: (907) 271-1523
Email: steven.d.clymer@usdoj.gov
Email: michael.heyman@usdoj.gov

Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JESSICA SPAYD,<br><br>Defendant. | Case No. 3:19-CR-00111-MAH-MMS<br><br>Government's Surreply to Defense Reply to Government's Response to New Trial Motion |

The United States of America, by and through its counsel of record, hereby replies to defendant Jessica Spayd's reply to the government's response to Spayd's motion under Rules 33(b)(1) and (b)(2) of the Federal Rules of Criminal Procedure to vacate her conviction and for a new trial. Dkt. #461.

*U.S. v. Spayd*
Case No. 19-CR-00111-MAH-MMS
Government's Surreply to Defense Reply to Government's Response to New Trial Motion
Page 1

Case 3:19-cr-00111-MAH-MMS    Document 488    Filed 07/15/25    Page 1 of 8

1. **Spayd's Failure to Move for an Extension of the Rule 33(b)(2) Filing Deadline, Which She Has Not Explained, Cannot Be Blamed on the Government.**

Spayd was aware of the basis for her new trial motion by September 28, 2024, when she described her claim in a letter to the government, and certainly no later than October 9, 2024, when she told the Ninth Circuit she planned to seek a new trial. Once Spayd became aware, she should have complied with the 14-day deadline in Rule 33(b)(2), either by moving for a new trial *or, if she needed time to obtain discovery, by moving to extend the 14-day deadline.* Spayd did neither. Instead, she ignored Rule 33(b)(2). Spayd filed nothing in district court until February 11, 2025, and then only after Chief Judge Gleason, in apparent frustration, ordered her to do so. Dkt. #413.

A criminal defendant must establish excusable neglect for failure to make a timely extension motion. *See, e.g.*, *United States v. Pomrenke*, 198 F. Supp. 3d 648, 702 (W.D. Va. 2016) (finding new trial motion untimely when "[t]he defendant has offered no good reason why she did not . . . request an extension of time to move for a new trial"); *United States v. Jones*, No. RWT 12-CR-0640, 2015 WL 2094120, at *3 (D. Md. May 5, 2015) ("Jones has not established excusable neglect for the delay of thirteen months between the verdict and her filing of a motion for extension of time to file a motion for new trial."), *aff'd*, 658 Fed. App'x 188 (4th Cir. 2016). Spayd made no effort of any kind to attend to the Rule 33(b)(2) deadline until February 11, 2025. Rather than explain her neglect, Spayd's reply wrongly accuses the government of dilatory discovery. This effort to shift blame is meritless and the timing of Spayd's receipt of discovery is irrelevant.

*U.S. v. Spayd*
Case No. 19-CR-00111-MAH-MMS
Government's Surreply to Defense Reply to Government's Response to New Trial Motion
Page 2

Case 3:19-cr-00111-MAH-MMS     Document 488     Filed 07/15/25     Page 2 of 8

Spayd's accusation lacks merit because the government's production of discovery was wholly voluntary, done in response to Spayd's written requests.[1] There was no court-imposed discovery order or schedule. If Spayd, who was subject to a Rule 33(b)(2) deadline, was dissatisfied with the timing of production, she could have moved the Court for a schedule. But despite Spayd having threatened to move to compel discovery in her September 28, 2024 letter to the government, Dkt. #471-11, Spayd never made such a motion. As a result, the government had no obligation to produce discovery under any timetable. Spayd also could have moved to extend the Rule 33(b)(2) deadline based on her claimed need for additional discovery. She never did this either.

Further, the government paused its production of discovery from December 17, 2024, to February 4, 2025, only to explore a defense-proposed case settlement. Defense counsel knew of this pause and the reason for it and voiced no complaint. The settlement effort failed at the last minute when Spayd personally rejected the very framework that her attorney had proposed, which was the impetus for the delay-causing negotiations. These events are described in Dkt. #420. The point here is not defense counsel intentionally misled the government about Spayd's willingness to settle; it is that this defense-prompted

---

[1] The extent of Spayd's right to discovery is unclear. Defense discovery in circumstances like these are limited, as this Court recognized in another Kindred-related case. *See United States v. Elisoff*, Case No. 3:20-CR-0006-MAH-KFR, Dkt. #163; *see generally United States v. Harold*, 734 F. Supp. 3d 1102, 1112-16 (D. Or. 2024). Because Spayd did not file a discovery motion and the government satisfied her discovery requests, there was no judicial determination of the government's discovery obligations here. More to the point, the government never was subject to a court order or a deadline with respect to whatever obligations it had.

*U.S. v. Spayd*
Case No. 19-CR-00111-MAH-MMS
Government's Surreply to Defense Reply to Government's Response to New Trial Motion
Page 3

discovery delay does not excuse Spayd's failure to move to extend her filing deadline.

Even if Spayd had a valid complaint about the timing of discovery, which she does not, it is a red herring. Spayd did not need discovery to move to extend the Rule 33(b)(2) deadline. She could have filed an extension motion by September 28, 2024, by which time she well knew that she planned to seek a new trial, but instead did nothing until February 11, 2025. Neither Spayd's new trial motion nor her reply brief offer *any* reason for this delay.[2]

Spayd, not the government, was bound to comply with Rule 33(b)(2). Spayd chose to rely on voluntary discovery with no set deadlines rather than seek a court-imposed discovery schedule; chose to shift the parties' focus to a settlement proposal that proved to be a wild goose chase; and, as months passed by, chose not to move for an extension of the 14-day filing deadline as Rule 33(b)(2) required. Spayd has provided no good reason for this Court to excuse her neglect.

**2. Spayd's Reply Brief Relies on Jokes and Speculation.**

Spayd's reply brief lays bare how thin her recusal arguments are. The government's response demonstrates that Spayd's motion relies on inaccurate assertions that are

---

[2] The only mention in Spayd's reply brief of her failure to move to extend the 14-day deadline in Rule 33(b)(2) comes in a cryptic parenthetical in which she seems to suggest that because of the passage of time before she learned of Kindred's misconduct, she had no obligation to do so. Spayd Reply at p. 2. The law says otherwise, making clear that the Rule 33(b)(2) deadline remains in effect after a period of excusable delay. *United States v. McGowan*, No. CR 07-00113 MMM, 2012 WL 13109973, at *6 (C.D. Cal. Apr. 16, 2012) ("A finding that a party's neglect was for some period of time excusable does not mean that there is no time limitation on filing the belated pleading.").

*U.S. v. Spayd*
Case No. 19-CR-00111-MAH-MMS
Government's Surreply to Defense Reply to Government's Response to New Trial Motion
Page 4

inconsistent with evidence showing that AUSAs ▮ and Karen Vandergaw were not involved in Spayd's prosecution. In a futile effort to counter this evidence, Spayd equates making jokes with providing legal advice and doing work on a prosecution; relies on an inconsequential e-mail exchange that occurred six months after verdict about an already-filed pleading; and speculates that Vandergaw may have said something at an internal USAO trial preparation session even though no one, including Vandergaw, recalls her having done so. Reply at pp. 12-13. None of this satisfies Spayd's heavy burden of showing that she is entitled to a new trial. *See, e.g.*, *United States v. Holland*, 519 F.3d 909, 914 n.5 (9th Cir. 2008) (explaining that speculation is insufficient to require recusal).

Spayd's effort to resuscitate her "fear of disclosure" recusal ground fares no better. Spayd tries to repair the fatal disconnect in her argument—why would Kindred believe that his rulings in *Spayd* would influence AUSAs ▮ or Brickey-Smith, who were not involved in that prosecution? Spayd hypothesizes that perhaps Kindred believed that AUSAs Tansey and Heyman somehow were in the "loop" about his undisclosed relationships, and he thus had reason to placate them. Reply at p. 14. But it is implausible conjecture to suggest that Kindred feared that ▮ had shared intimate details about her personal life with two prosecutors whom she just had met and had described as a "bonafide boner" and "the other short king." And even if this Court were to credit Spayd's evidence-free speculation that Kindred feared that the AUSAs assigned to *Spayd* had learned his secrets, why wouldn't he also fear that other attorneys in the USAO, or in the Anchorage

*U.S. v. Spayd*
Case No. 19-CR-00111-MAH-MMS
Government's Surreply to Defense Reply to Government's Response to New Trial Motion
Page 5

Case 3:19-cr-00111-MAH-MMS   Document 488   Filed 07/15/25   Page 5 of 8

legal community more generally, also found out, rendering efforts to placate Tansey and Heyman useless?

Spayd also resorts to a laundry-list of recusal contentions, Reply at p. 15, a common tactic for inflating arguments that cannot stand alone. The government has conceded that ▮'s limited work on Spayd's case as a law clerk required recusal, but that violation was harmless. The other items on Spayd's list, whether considered individually or in combination, do not present a reasonable possibility of pro-government bias in Spayd's case. Kindred had undisclosed interactions with AUSAs ▮ and Vandergaw, but neither of them was involved in the *Spayd* prosecution; Kindred had an undisclosed relationship with ▮, but she represented Spayd's own trial witness; there is no logical connection between Kindred's desire to avoid disclosure of his secrets and his rulings in *Spayd*; and the Kindred-▮ text messages say nothing substantive about case-related matters and instead only denigrate the trial AUSAs. In short, the contentions in Spayd's laundry list do not establish a statutory or constitutional basis for a new trial.

3. **Spayd's Effort to Distinguish *United States v. Williams* Misses the Point.**

Spayd distinguishes the facts in *United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020), one of three Seventh Circuit decisions finding harmless error under the *Liljeberg* standard, from those in her case. Reply at p. 17. But the point of citing this trio of decisions in the government's response was not factual similarity; it was because their analysis of the *Liljeberg* factors is instructive here. Equally instructive is the discussion in Judge

*U.S. v. Spayd*
Case No. 19-CR-00111-MAH-MMS
Government's Surreply to Defense Reply to Government's Response to New Trial Motion
Page 6

Case 3:19-cr-00111-MAH-MMS    Document 488    Filed 07/15/25    Page 6 of 8

Gleason's decision in *Silverton Mountain Guides LLC v. U.S. Forest Serv.*, No. 3:22-CV-00048-SLG, 2025 WL 715842 (D. Alaska Feb. 21, 2025).

4. **An Evidentiary Hearing is Unnecessary Because Additional Evidence Bearing on ▓▓▓▓'s or Vandergaw's Credibility Will Not Satisfy Spayd's Burden.**

The government has reported relevant statements of ▓▓▓▓ and Vandergaw to the Court without vouching for either. It also has providing information from other sources, including declarations from AUSAs Tansey and Heyman, who both denied that ▓▓▓▓ Vandergaw were involved in the *Spayd* prosecution. If Spayd's only reason for an evidentiary hearing is to discredit ▓▓▓▓ Vandergaw—and she suggests no other reason—a hearing is unnecessary. Questioning that elicits testimony reflecting poorly on ▓▓▓▓'s or Vandergaw's credibility will not prove that either was involved in the prosecution or that a new trial is required. Spayd has not satisfied her burden, and an evidentiary hearing will not change this.

RESPECTFULLY SUBMITTED July 15, 2025, at Anchorage, Alaska.

WILLIAM M. NARUS
Acting United States Attorney for the District of Oregon

*/s/ Steven D. Clymer*
Steven D. Clymer
Special Attorney Acting Under Authority Conferred by 28 U.S.C. § 515
United States Department of Justice

*U.S. v. Spayd*
Case No. 19-CR-00111-MAH-MMS
Government's Surreply to Defense Reply to Government's Response to New Trial Motion
Page 7

Case 3:19-cr-00111-MAH-MMS    Document 488    Filed 07/15/25    Page 7 of 8

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2025, a true and correct copy of the foregoing was served electronically on defense counsel.

United States Attorney's Office

*U.S. v. Spayd*
Case No. 19-CR-00111-MAH-MMS
Government's Surreply to Defense Reply to Government's Response to New Trial Motion
Page 8

Case 3:19-cr-00111-MAH-MMS   Document 488   Filed 07/15/25   Page 8 of 8